STATE v. JOHN DAVIS.

*Slander of Women—Witness—Character—Comment of Counsel.*

1. When there is a direct conflict between the testimony of a witness and of the defendant, who offers himself as a witness, and evidence is introduced to show the good character of the witness, it is legitimate ground of comment by the solicitor, that no witness was offered to show the good character of the defendant.

2. Where a defendant offers himself as a witness, he occupies the same position as any other witness. He is entitled to the same protection and privileges, and is equally liable to be impeached and discredited.

3. The offence of slandering an innocent woman (*Code*, §1113) consists in the attempt to destroy the reputation of an innocent woman by a charge of incontinency.

4. By an "innocent woman" is meant one who never had actual illicit intercourse with a man.

5. *Quære*—Whether the slander of a woman who had once lapsed from virtue, but who had reformed and led an exemplary life, would be a crime under this statute.

(*State* v. *McDaniel*, 84 N. C., 803; *State* v. *Effler*, 85 N. C., 585, cited and approved).

This was an INDICTMENT under section 1113 of *The Code*, tried before *Graves, Judge*, at the Fall Term, 1884, of CHOWAN Superior Court.

The indictment charged the defendant with slandering one Florence Paxton, an innocent woman, by saying he had had sexual intercourse with her.

On the trial, the said Florence Paxton was examined as a witness for the State, and testified that "she had never had intercourse with the defendant Davis, or any other man, and that her life had been pure."

The defendant Davis, was then introduced as a witness in his own behalf, and swore that he had on several occasions had criminal intercourse with the said Florence.

A number of witnesses were introduced to prove the character of said Florence, and stated it was very good. No witness was introduced as to Davis's character.

The Solicitor commented on the fact, that the defendant had introduced himself as a witness, and had failed to introduce witnesses to sustain his character, and said the witness Florence comes into court with her character sustained—the defendant without a character.

The defendant objected to these comments; but the Court refused to stop the Solicitor, stating they were proper, after the defendant had made himself a witness, and there was a conflict between him and Florence. To which the defendant excepted.

The court charged the jury that, by innocent woman, the statute meant "one who had never had actual illicit intercourse with a man. That mere lasciviousness, and the permission of liberties by men with her, although we might consider them improper, were not contemplated by the statute;" and the court further stated to the jury, "that the defendant was before them in a twofold capacity, as witness and defendant, and that the comments of the solicitor should be considered only as affecting his character as witness." The defendant excepted to the charge.

There was a verdict of guilty—judgment against defendant, from which he appealed.

*Attorney-General* and *J. G. Martin,* for the State.
*Messrs. Pruden & Bunch,* for the defendant.

ASHE, J. (after stating the facts). The statute under which the defendant was indicted, reads: "If any person shall attempt, in a wanton and malicious manner, to destroy the reputation of an innocent woman, by words written or spoken, which amount to a charge of incontinency, every person so offending shall be guilty of a misdemeanor, and fined or imprisoned in the discretion of the court." *The Code,* sec. 1113.

In *State* v. *McDaniel,* 84 N. C., 803, the construction given to the statute is, that the "offence defined consists, not in the slander of a woman by falsely charging her with incontinency, but in the *attempt to destroy the reputation* of an innocent woman

by such means; and by 'innocent woman' is meant a pure woman—one whose *character,* to use the language of the statute, is '*unsullied*'—that is, undefiled, not stained with moral turpitude—and what is meant by a *pure* woman, is a *chaste* woman, and Webster defines *chaste* to be 'pure from all unlawful commerce of sexes.'"

When, then, His Honor in his charge defined an innocent woman to be "one who had never had actual intercourse with a man," he has strictly followed the interpretation heretofore given to the statute by this Court; and what His Honor has stated in his charge as to *lasciviousness,* and the *permission of liberties,* though uncalled for by the facts of this case, is not inconsistent with the construction which has been given to the statute.

The construction of the statute, as given by this Court, and followed by His Honor, is, in our opinion, very strict, and would seem to exclude from the protection of the law, every woman who had at some time of her life, made a *slip in her virtue;* and every man, in the course of his life, must have had instances brought to his knowledge, of unfortunate females who have at some period in their lives, been led from the *path of virtue* by the wiles of a seducer, who had afterwards reformed, and by a course of exemplary conduct established for themselves a character for chastity above all reproach. Shall it be said that these unfortunates are not to be allowed a "*locus penitentiæ,*" and are to be subject forever to the vile tongue of the maligner and slanderer? How this may be, we are not called upon to decide, nor do we express an opinion; but, however it may be, the charge of His Honor is as favorable to the defendant as he could expect or desire. It has certainly done him no harm, and he has no cause to complain.

As to the other exception taken by the defendant, to His Honor's refusal to stop the solicitor's comments upon the testimony of the defendant *as a witness,* we are of opinion it cannot be sustained.

STATE v. DAVIS.

The prosecutrix and defendant were both examined as witnesses in the cause, and there was a direct. conflict in their testimony.

The female witness's character was sustained by a number of witnesses, who testified it was *very good*. *If very good*, it must have been good for chastity and truth; but the defendant offered no evidence to sustain his character. This made a strong contrast between the testimony of the witnesses, and we think it was a legitimate ground of comment. When the solicitor, after commenting upon the testimony of the female witness, how it had been sustained, said the defendant *was without character*, it manifestly meant he had not supported his character by witnesses, and was said in reference to the contrast between the testimony of the two witnesses, as they stood before the jury. It was said *arguendo*, and under the circumstances was entirely legitimate.

The defendant, as His Honor said in his charge to the jury, stood in the double capacity of defendant and witness. If he had not put himself upon the witness stand, the comments of the solicitor would have been undoubtedly objectionable, but when he introduced himself as a witness, he occupied the same position with any other witness. He was under the same obligations to tell the truth, entitled to the same privileges, received the same protection, and was equally liable to be impeached or discredited. *State* v. *Efler*, 85 N. C., 585.

There is no error. Let this be certified to the Superior Court of Chowan county that the case may be proceeded with in conformity to this opinion and according to law.

No error. Affirmed.