D. L. PARISH, Adm'r. of ALEX. MURPH v. A. M. WILHELM.

An officer having two executions against the plaintiff and his father, and
another execution against the father alone, levied on three horses belonging
to the plaintiff, as the property of the father; the plaintiff offered to pay
off the executions against *himself*, but the officer refused to receive the
money, and proceeded to sell the horses : *Held*, that the officer became a
trespasser *ab initio*, and was liable *in an action of trespass*, for the value of
the two horses last sold.

An objection that the plaintiff should have filed a special instead of a general
replication, comes too late after verdict.   (Rev. Code ch. 3, s. 5.)

TRESPASS, tried before *Mitchell, J.*, at Spring Term 1868
of the Superior Court of CABARRUS.

The plaintiff declared for damages sustained by the taking
and converting of two horses belonging to his intestate, and
offered evidence sustaining his declaration.   The defendant
attempted to justify on the ground that he was an officer, and
proved that as such he had executions in his hands against
one Rudolph Murph, the father of the plaintiff's intestate, that
two of these executions were also against the latter as surety
for his father, and that the third, which was for a much larger
sum than the other two, was against the father alone.   He
levied the executions on three horses belonging to the plain-
tiff's intestate, as the property of Rudolph Murph.

It was further in evidence that the intestate of the plaintiff
offered to pay off the executions against himself before the
day of sale, and that the defendant refused to receive the
money unless he would also dispose of the third execution;
and proceeded to sell the horses.   The first horse sold brought
enough to satisfy the executions against the plaintiff's intestate.

The Court charged the jury that the defendant had failed
to make out his defense of justification, and the defendant
excepted.   Verdict for the plaintiff ; rule for a new trial
discharged; judgment, and appeal.

*Boyden & Bailey*, for the appellant.

Defendant cannot be treated as a trespasser *ab initio*, by

reason of mere excess, *Smith* v. *Eggerton*, 7 A. & E., 167 ; *Shorland* v. *Govett*, 5 B. & C., 485 ; *Gates* v. *Lounsbury*, 20 Johns., 427; *Whitney* v. *French*, 25 Vt., 662; *Walker* v. *Lovell*, 9 Fost (N. H.) 138. Or at least, (as the articles were sold separately and not in mass) only for the horse last sold, and a *venire de novo* should be granted because of the error of the Court below in treating defendant as trespasser for all the articles. Six Carpenters' case, 1 Smith Lead. Cases 62, Eng. ed. with note, *Dod* v. *Merger*, 6 Mod. 215; *Harvey* v. *Pocock*, 11 M. & W., 740. The question of a trespass *ab initio*, can not arise on the pleadings, as it should have been made by a special replication. Six Carpenters' case *Gargrave* v. *Smith*, Salk 221, &c., Buller *N. P.*, 81; and according to our practice, if no replication is entered, as in our case, a general one is understood, *State* v. *Hankins*, 6 Ire. 428.

*Phillips & Battle, contra.*

When the writ has been fully executed, subsequent acts by an officer are *trespasses*, *Shorland* v. *Govett*, 5 B. & C. 285. Trespass lies against sheriff, selling under execution after judgment has been satisfied, *Kuhn* v. *North*, 10 S. & R. (Penn.) 399. After an execution has done its office, if the officer proceeds to act under color of it by order of plaintiff, both become trespassers, *Collins* v. *Waggoner*, Breese 143.

Officer taking under lawful execution, but afterwards refusing the defendant a right of selection and appraisement under exemption act, becomes trespasser *ab initio*, *Wilson* v. *Ellis*, 28 Penn., 238; *Freeman* v. *Smith* 30, *ibid.* 264.

Defect in replication is cured by verdict.

BATTLE, J. The first position taken by the defendant's counsel is undoubtedly correct. It does not matter what an officer declares when he seizes property, for if he have a lawful process authorizing him to seize it, he is not guilty of a trespass though he professed to act under another process which did not justify him, *State* v. *Elrod*, 6 Ire. 250; *Crowther* v. *Ramsbottom*,7 T. R., 650; *Greenville* v. *College of Physicians*, 12 Mod. Rep. 385.

In his second position, the counsel for the defendant is not so fortunate. The officer by selling the horses upon which he had levied, after a tender of the money by the plaintiff's intestate for the amount of the executions against him, became a trespasser *ab initio*. The principle was fully discussed and settled in the celebrated Six Carpenters' case, reported in 8 Coke's Rep. 146, that if a man abuse an authority given him by the law, he becomes a trespasser *ab initio*. Thus it was said in that case that "when entry, authority or license is given to any one by the law, and he doth abuse it, he shall be a trespasser *ab initio*; but where an entry, authority, or license is given by the party, and he abuses it, then he must be punished for abuse, but shall not be a trespasser *ab initio*. And the reason for this difference is that in the case of a general authority or license of law, the law adjudges by the subsequent act, *quo animo*, or to what intent he entered, for *acta exteriora indicant interiora secreta.*" A better reason was we think given by the Court in the case of the *State* v. *Moore*, 12 New Ham. Rep. 42, to-wit: that it was the policy of the law for preventing its authority being turned into an instrument of oppression and injustice.

This doctrine has often been applied to persons acting in an official capacity, and they have been held trespassers *ab initio* for any act done in abuse of their authority. Thus in ancient times in England, a purveyor, who took goods for the King's house under a commission was held a trespasser for selling them in the market, though the first taking was lawful, 18 Hen. 6, 19b., cited in the Six Carpenters' case. So in Ward's case, Clayt. 44, it was held that a constable who had a warrant to search the house of a suspected person for stolen goods, and who pulled down the clothes of a bed in which there was a woman, and attempted to search her person, by this indecent abuse of his authority became a trespasser *ab initio*. And again, it was decided in Pennsylvania that a constable who seized the property of a defendant under an execution, and refused to let such defendant select and have appraised for him, property to the amount of $300

under an act of that State, the defendant demanding and being entitled to the benefit of the exemption, became liable as a trespasser *ab initio*. *Wilson* v. *Ellis*, 28 Penn. 238. The conduct of the defendant in the case now before us, was quite as unjustifiable as was that of the officer in either of the cases above cited. The plaintiff's intestate had an undoubted right to pay off the executions against himself, and thus relieve his horses from the levy, but this privilege was refused him by the defendant, who proceeded to sell the horses for the purpose of satisfying executions against another person. In doing this he abused the authority which the law conferred upon him to levy upon the intestate's property, and thereby became a trespasser *ab initio*; as, also, by selling the second horse, after the sale of the first had brought money enough to pay off the executions which he held against the intestate. But as the other illegal act extends to both the horses, it is unnecessary to rely upon this.

The defendant's counsel again objects that the question of an abuse of the defendant's authority cannot be raised upon the pleadings in the case, because it ought to have been made by a special instead of a general replication. This objection might have been sustained had it been taken in proper time, but it comes too late after verdict. The Revised Code, ch. 3, sec. 5, cures all defects arising from mispleading or insufficient pleading, after a verdict has been rendered.

The judgment must be affirmed.

PER CURIAM.                              No error.