JOHN RICHARD MOTHERSHED, ADMINISTRATOR OF THE ESTATE OF NETTIE MOTHERSHED TORRENCE, PLAINTIFF v. FRANK L. SCHRIMSHER, ADMINISTRATOR OF THE ESTATE OF RUPERT FRITZ TORRENCE, DEFENDANT

No. 9126SC68

(Filed 21 January 1992)

**Descent and Distribution § 36 (NCI4th) — slayer statute — slayer excluded from victim's estate — no provision for victim to participate in slayer's estate**

The N. C. Slayer Statute, N.C.G.S. § 31A-4, deems the slayer to have predeceased his victim only for purposes of excluding the slayer from his victim's estate, and it does not establish the order of death between the slayer and the victim for purposes of distributing both the victim's and the slayer's estates.

**Am Jur 2d, Descent and Distribution §§ 101, 105, 109.**

APPEAL by plaintiff from an order denying leave to amend the complaint entered 15 November 1990 and from an order granting summary judgment entered on 16 November 1990 by *Judge Chase B. Saunders* in MECKLENBURG County Superior Court. Heard in the Court of Appeals on 4 November 1991.

*Edwin H. Ferguson, Jr. for plaintiff-appellant.*

*John A. Mraz for defendant-appellee.*

LEWIS, Judge.

At issue in this case is the effect of the North Carolina Slayer Statute's clause which deems the slayer to have died "immediately prior" to the victim's death. The question is whether the Statute establishes the order of death between the slayer and the victim

MOTHERSHED v. SCHRIMSHER

[105 N.C. App. 209 (1992)]

for purposes of distributing both the victim and the slayer's estate or whether the Statute merely ignores the slayer's actual date of death for purposes of distributing the victim's estate.

Nettie and Rupert Torrence were mother and son. Prior to their deaths, each was the primary heir of the other. Mrs. Torrence was a widow with Rupert her only surviving child. Rupert Torrence never married and has no known children. On 27 January 1989, Mr. Torrence shot his mother and himself but the bodies were not found until 30 January 1989. Though the death certificates for each indicate both died on 30 January 1989, the order of death is unknown. Both died intestate. Plaintiff was named the administrator of Nettie Torrence's estate, while defendant was named the administrator of Rupert Torrence's estate. Plaintiff filed a wrongful death action against defendant on 7 August 1989. It was amended by consent to include a second cause of action for a declaratory judgment that Rupert Torrence was a slayer and requested that plaintiff's intestate be declared her son's sole heir.

On 18 October 1990, Rupert Torrence was adjudicated a slayer under the Statute. Defendant then filed a motion for summary judgment as to the remainder of plaintiff's second cause of action: i.e., whether plaintiff's intestate was her son's sole heir. Later, plaintiff filed a motion to amend the complaint to add a third cause of action seeking equitable relief. Summary judgment was granted in defendant's favor and the motion to amend was denied. Plaintiff appeals both rulings.

The peculiarity in the case at bar lies in the bizarre facts; a murder-suicide, which seems to have terminated the rights of a mother and son to partake in the other's intestate estate despite the fact that prior to their respective deaths each was the primary heir of the other. Mr. Torrence's right to inherit as his mother's heir was terminated by virtue of the North Carolina Slayer Statute (Statute), N.C.G.S. § 31A-3 through § 31A-12. His statutory disinheritance is undisputed. At issue is Mrs. Torrence's right to inherit from her son's estate. Because the coroner's report indicates that the Torrences' order of death is uncertain, plaintiff urges this Court to read the clause in the Statute which deems the slayer to have predeceased the victim as establishing the order of death between the slayer and the victim for purposes of distributing the slayer's estate. As this would extend the Statute beyond its present boundaries, we decline to do so.

. The Slayer Statute was enacted to " 'take care of every situation in which the slayer may receive *any* benefit of *any* kind as a result of the decedent's death.' " *Quick v. United Ben. Life Ins. Co.*, 287 N.C. 47, 56, 213 S.E.2d 563, 568-69 (1975) (emphasis added). The Statute bars an *intentional killer* from gaining any benefit from the victim's estate. *Id.* An involuntary killer may be barred from his victim's estate by resort to the common law principle that a person may not profit by his wrongful acts. *Id.* Common law remedies are not supplanted by the Slayer Statute, but, are applied only where the Statute does not apply. *Id.* "The statute makes no attempt artificially to alter the date of death of the decedent, but [the Statute] provides instead that the actual date of death of the slayer is to be disregarded." *Porth v. Porth*, 3 N.C. App. 485, 496, 165 S.E.2d 508, 516 (1969). The roll is called at the victim's actual date of death and the slayer is not permitted to be counted among the heirs. *Id.*

Plaintiff assigns as error the trial court's summary judgment ruling that Nettie Torrence was not her son's sole heir and the denial of the motion to amend. Each side argues over the significance of the summary judgment ruling. Plaintiff argues that the ruling precludes Mrs. Torrence's estate from ever proving that she was her son's heir. The defendant argues that the ruling merely prevents plaintiff's intestate from automatically becoming an heir as a "matter of law" upon Rupert Torrence's adjudication as a slayer without having to prove her right of inheritance.

Defendant's motion for summary judgment asked the court to determine whether the Slayer Statute deemed Rupert Torrence to have predeceased his mother for all purposes or merely for the purpose of distributing his victim-mother's estate. Defendant's motion also asked whether Nettie Torrence was an heir "as a matter of law." The trial court's ruling (first ruling) stated that the slayer is deemed to have predeceased his victim only for the purpose of distributing the victim's estate. The confusion lies not in this first ruling, but in the court's second ruling which stated that Mrs. Torrence is not her son's "heir at law." We believe that the court intended to hold, in the second ruling, that Mrs. Torrence did not *automatically* become her son's heir "as a matter of law" by virtue of the Slayer Statute's fiction which deemed Rupert Torrence to have predeceased his victim-mother.

The second ruling, as written, asks and answers a question which was not before the court: the descent and distribution of Rupert Torrence's estate. The second ruling summarily precludes Mrs. Torrence's administrator from proving that Mrs. Torrence survived her son and as such was his sole heir. Summary judgment may be granted where there are no issues of material fact. N.C.G.S. § 1A-1, Rule 56 of the N.C. Rules of Civil Procedure. "The burden of establishing that there is no material factual issue to litigate and [that] summary judgment is appropriate is always upon the movant." *Lynch v. Newson*, 96 N.C. App. 53, 55, 384 S.E.2d 284, 286 (1989), *disc. rev. denied*, 326 N.C. 48, 389 S.E.2d 90 (1990) (citation omitted). Survivorship is a crucial issue in this case. The material facts which Rupert Torrence's estate had to disprove so as to obtain summary judgment in its favor was that Mrs. Torrence predeceased her son. Summary judgment on the survivorship issue is not properly granted in the case at bar because the limited facts presented do not carry the movant's burden of showing that no issues of material fact exist. Here, where the sole evidence on record reveals that the order of death between the parties is uncertain, survivorship is a disputed material fact which should be decided by a jury. Hence, the trial court's second ruling proclaiming Mrs. Torrence "not an heir at law" was improper because it answered a question which was not asked and because summary judgment as to her right to inherit could not have been properly granted under the facts of this case.

Summary judgment on the first ruling regarding the Slayer Statute's effect was properly granted. The Statute deems the slayer to have predeceased his victim only for purposes of excluding the slayer from his victim's estate. This is evident by both the Statute's plain language and by statutory construction. The Statute provides that:

> The slayer shall be deemed to have died immediately prior to the death of the decedent and the following rules shall apply:
>
> 1) The slayer shall not acquire any property or receive any benefit from the estate of the decedent by testate or intestate succession or by common law or statutory right as surviving spouse of the decedent.
>
> 2) Where the decedent dies intestate as to property which would have passed to the slayer by intestate succession, such

property shall pass to others next in succession in accordance with the applicable provision of the Intestate Succession Act.

N.C.G.S. § 31A-4 (1984). The Statute's plain language clearly bars the slayer from participating in the victim's estate. Nowhere does the Statute authorize the victim to participate in the slayer's estate. That may or may not occur. The Statute does not indulge the fiction that the slayer's date of death is other than the actual date of death, but merely establishes a presumption to exclude the slayer. *Porth v. Porth*, 3 N.C. App. 485, 496, 165 S.E.2d 508, 516 (1969). Had the Statute been enacted for the dual purpose of adjudicating slayer status and for altering the intestate succession of both the slayer and victim, it would have so stated.

Our reading of the Slayer Statute does not work an injustice in the case at bar. Plaintiff argues that the coroner's report indicates that the order of death is uncertain and survivorship will, therefore, be difficult to prove. Survivorship is often difficult to prove but the Slayer Statute was not enacted to ease this burden. The Statute is one of exclusion, not of inclusion. When applicable, it acts to exclude a slayer from participation in the victim's estate. It does not act to include the victim in the slayer's estate due to the slayer's crime. This would contradict the Statute's stated purpose. The plaintiff at bar is not without recourse. As summary judgment did not adjudicate survivorship, Mrs. Torrence's estate still has the opportunity to prove that she survived Rupert Torrence and as such was his sole heir. If it is unable to do so then the intestate succession laws apply. Whether or not Mrs. Torrence is found to have survived her son, her estate may seek such recompense as the law allows pursuant to a wrongful death action against Rupert Torrence's estate. We cannot, under the record before us, rule that only Rupert Torrence's maternal heirs could inherit to the exclusion of his paternal heirs.

Though the plaintiff's second assignment of error was not argued, we will consider it. The complaint had already been amended once by consent to add a second cause of action. Here, leave of court was required to amend because the time for responsive pleading had run. We find no abuse of discretion.

Affirmed as to the trial court's denial of the motion to amend.

Affirmed as to the trial court's ruling that Rupert Torrence is a slayer as a matter of law.

The court's second ruling that Mrs. Torrence is not her son's heir at law is vacated.

Judges WELLS and WALKER concur.